MARY WASHINGTON FEMALE COLLEGE *v.* JOHN McINTOSH.

1. CONTRACT: RESCISSION: REFUSAL OF ONE PARTY TO COMPLY: CASE IN JUDGMENT.—The purchaser of a scholarship in an incorporated seminary of learning will be entitled to a rescission of the còntract, if. the corporation refuse to comply with their part of the agreement, by charging him with tuition fees for one of the studies embraced in the scholarship.

2. SAME: SAME: WHERE ONE PARTY IS UNABLE TO COMPLY: CASE IN JUDGMENT. —A party who has given his note for the price of a scholarship in an incorporated seminary of learning, cannot be compelled to pay it, after the corporation has become insolvent, and abandoned the keeping of the school contemplated in the charter, if it were understood between the parties, at the time of the purchase, that the price of the scholarship was to constitute a part of a permanent endowment fund, the interest on which alone was to be expended.

3. SAME: EVIDENCE: PAROL TO SHOW WHAT IS EMBRACED IN A SCHOLARSHIP.— The statement of the agent of an incorporated seminary of learning, made to a purchaser of a scholarship therein, and as an inducement to the purchase, as to what studies were embraced in the scholarship, is competent evidence in favor of the purchaser to show what studies are so embraced: so also are the resolutions and action of the board of trustees of the incorporation.

4. CORPORATION: SEMINARY OF LEARNING: POWER TO RELEASE SUBSCRIBER FOR SCHOLARSHIP.—An incorporated seminary of learning has the power to release a party from the payment of a note executed by him for the price of a scholarship in the institution.

5. NEW TRIAL: WHEN ADMISSION OF ILLEGAL EVIDENCE, NO CAUSE FOR.—The admission of illegal evidence is no cause for granting a new trial, if the evidence were immaterial, and it appear that the verdict is well justified by the other evidence in the cause.

6. SAME: WHEN REFUSAL TO GIVE A LEGAL INSTRUCTION, NO CAUSE FOR.—The refusal to give a legal instruction is no ground for granting a new trial, if the

principle of law embraced in it has already been given to the jury in another instruction.

ERROR to the Circuit Court of Chickasaw county.    Hon. Joel M. Acker, judge.

The plaintiff in error sued the defendant on a promissory note for $500, due five years after its date, and payable to W. J. Riddle, treasurer, for the use of the endowment fund of the Baptist Female College at Pontotoc, and bearing interest from date, and which was to be paid annually.

The defendant filed two special pleas, and also the general issue. The first special plea alleged that the note sued on was given in consideration of an agreement, on the part of the plaintiff, that all who subscribed $500 to the endowment fund of the college should have the right of sending one·pupil, tuition free, to said institution, for all time; and that after the date of said note, defendant did send one pupil to said institution, and that said college refused to receive said pupil tuition free, and compelled defendant to pay therefor full rates of tuition; and in the second answer he alleges that the note was given to aid in the establishment of an endowment fund for said institution, the interest on which fund alone was to be used by the institution; and avers that said institution has utterly failed; that it is insolvent, and disbanded, and the school no longer kept up; that the proposed endowment fund consisted of sixty thousand dollars, to be raised by similar contributions to the one now sued on; that a large portion of said fund was so raised, but that it has been misapplied and wasted: 1st, by the voluntary release of many of said subscriptions by said institution; and 2d, by the assignment of the rest to pay old debts, and consequently this money is not needed, nor could it be applied to said fund, as orginally designed, if collected.

To these two special pleas the plaintiff demurred, and the demurrer was overruled by the court, and the plaintiff took issue on them.

On the trial the plaintiff read to the jury, as evidence, the note above copied, and closed his case.

The defendant then proved by Mallett, that the note sued upon was taken by him, acting as agent of plaintiff; that he stated to

defendant that by giving the note and paying interest thereon annually, at the rate of eight per cent. per annum, he would be entitled to send one scholar to the school perpetually, free of tuition fees.

Witness was then asked by defendant, if he did not state to defendant that the note was to be renewable when it became due, and the objection of plaintiff to the question being overruled by the court, and plaintiff excepted, the witness stated, that he did not recollect what was said on the subject, but his understanding was, that if the interest was paid promptly, the party should have the privilege of renewing the note, and he was in the habit of making this statement to parties giving their notes.

Witness testified further, that the object of the endowment-fund was to keep up the college, and to pay the teachers, and the interest was to be used for the same purpose, if found sufficient. That the parties engaged in establishing the institution intended to raise $60,000, and he had no doubt he stated to defendant that he believed they would be able to do so. That he did not know how much had been raised, or what had been done with the scholarships. That the institution was established and organized as contemplated. He also stated that, at the time he took the defendant's note, he informed the defendant that music was embraced in the studies covered by the scholarship.

The defendant then offered to read as evidence portions of the record of the proceedings of the board of trustees of the institution, which was objected to by plaintiffs as incompetent and illegal, admitting, at the same time, that the book produced was the original record kept by said trustees. This objection was overruled, and plaintiff excepted.

Defendant then read to the jury from said record-book. This record shows that many meetings were held, at which various steps were taken to locate, establish, organize, endow, and put in operation a school of high character, for the education of females. That agents were appointed to procure contributions, subscriptions, and to sell scholarships. That an executive board was appointed, and empowered to control the agents, and to perform other duties. That it was resolved, that contributions to the endowment-fund

should be secured by note, a form of which was prescribed, in substance the same as the note sued on in this case.

A committee was appointed to draw up a form for a certificate of scholarships of different kinds, and that a perpetual scholarship should be given for the price of $500, which entitled the holder to receive instruction in any *college* class which she might be prepared to enter.

The trustees defined and explained what was meant by scholarships, and amongst other things, resolved that " the right of instruction secured by scholarships extends only to the college classes proper, and not. to the class or classes assigned to the preparatory department."

The record also contains the report of J. G. W. Mallett, agent to procure scholarships, embracing the one taken by the defendant in this case, which was received and approved by the board of trustees.

It appears that teachers were chosen and the school taught up to some time in the year 1857, the latest date found in the portion of the record-book read in evidence.

Dr. Kilgore was then introduced as a witness for defendant, and was asked if he had not subscribed for a scholarship, and what he had done in relation thereto, and whether he had not been released from his obligation to pay for the same, and if so, on what terms? to which question plaintiff objected, on the ground that it was irrelevant, illegal, and incompetent; which objection was overruled by the court, and to which ruling the plaintiff excepted. Witness then testified that he subscribed for two scholarships, and gave his notes for $1000; that he sent two scholars to said school under said scholarships; that he paid the interest on his notes for three years, and afterwards he paid $30 more, and took up his notes from Dr. Ware, and surrendered his scholarship; that this was done as a compromise between him and Dr. Ware, who acted for the plaintiff; that his notes were not due at the time of the compromise.

Defendant then testified that he sent a scholar to the school under his scholarship in 1852, soon after the school was opened, and paid the amount of $22 50, an advance for board fee, and $20, half of the interest on scholarship then due. At the close of the

session he went after his daughter, who was at school, and was required by the president of the school to pay $22 50 for board, $25 for tuition in music, and $5 for use of instrument, and also $20 on his scholarship; that he refused to pay at first, insisting upon his right to send a pupil under his scholarship free of charge, on paying the interest on his notes; that Tucker, the president, said he was the proper person to settle with, and that he would not be governed by the scholarships, and defendant settled with him as required; that he demanded his note of Tucker, and afterwards of Dr. Ware, the treasurer, but they refused to give it up.

Defendant then proved by J. C. Keeney, that he was for two years principal of the school, and was accustomed to settle with parents and guardians for the tuition of their daughters and wards, and that his acts in this respect were sanctioned and ratified by the trustees; that in all settlements made by him, the rights of those holding scholarships were recognized, and they were not required to pay tuition for the studies of the college course.

That the college course of studies did not embrace music or any of the ornamental branches; but that the trustees resolved to allow to holders of scholarships tuition in music, free, in addition to the usual college course, and he settled on this principle, that music, painting, &c., were considered as extra studies only to be pursued when requested and desired by parents. That the school was in a prosperous condition when he had charge of it, and was provided with all necessary teachers and apparatus to give a thorough education.

The plaintiff then proved by J. A. Ware that he had been a trustee of the institution from its organization to the present time; that the school had been kept up and successfully taught until the summer of 1857, when they had been compelled to suspend operations for the want of funds to pay teachers and other necessary expenses. That the school had not been abandoned, and that if the trustees had the means of paying the debts due, and to carry on the school, it would be done. That if those who had given their notes for scholarships, as the defendant in this case had done, had paid up according to their obligations, the institution would have had ample means to have paid all debts, and to have kept the school in successful operation. That the trustees had, on the faith of notes

given for scholarships, contracted debts for buildings, teachers' salaries, and apparatus for the school, and had made other needful outlays to the amount of several thousand dollars. That the corporation owns upwards of forty acres of land adjoining the town of Pontotoc, with commodious buildings sufficient to accommodate one hundred and fifty or more pupils. That he compromised with Dr. Kilgore, who had given his notes for two scholarships. That Dr. Kilgore had paid the interest promptly, and his notes were not yet due; and that he was authorized by the board of trustees to compromise with parties who had so paid promptly, and whose notes were not due. That this course was pursued in several such cases to raise money to meet pressing necessities of the corporation. That the board of trustees had no idea of abandoning the institution, but have expected to reopen the school so soon as they can collect means so to do. That the scholarships were not intended to embrace anything but the regular college course of studies; and that the school had been temporarily suspended for the want of means resulting from the failure of defendant and others to pay their notes.

On cross-examination, he stated that if the money sued for in this case was recovered, it would be applied to the payment of debts of the institution, and that a larger amount than that sued for was necessary for that purpose. That if plaintiff could collect the sums now due from defendant and others, it would be more than sufficient to pay all their debts. That witness had taken two scholarships, and had paid the whole amount.

It was also proved by C. D. Fontaine that the school was taught for several years by very competent teachers, and was in a prosperous condition until a year or eighteen months previous to the trial, and was then, and until recently, under the charge of Mr. Bateman. That a school was now taught in the buildings of the corporation by Mr. Rootes, a private school as he understood.

This was all the evidence.

The 8th charge asked by the plaintiff was in these words: "If the contract was that McIntosh should have the tuition of one scholar by his paying the interest on the note here sued on annually and he (McIntosh) failed to pay the said interest annually, he was

not entitled to the said tuition, and cannot set the refusal of the tuition up as a defence to this suit."

This charge was refused by the court.

The 3d charge given for the plaintiff is as follows : "That if the defendant was entitled to the tuition of a scholar without charge, upon the payment of the interest annually, then he could not claim the tuition fee, unless he had paid the interest annually when it became due."

The 11th instruction asked by plaintiff and refused by the court is as follows : "The pretended release of Dr. Kilgore and others was illegal and void, and did not release McIntosh or any other maker of notes to the endowment-fund of Mary Washington Female College."

The verdict was for the defendant.

The plaintiff moved for a new trial, which being refused, he excepted, and sued out this writ of error.

*H. R. Miller* and *L. E. Houston,* for plaintiff in error.

*T. S. Evans,* for defendant in error.

HANDY, J., delivered the opinion of the court.

The main question involved in this case is, whether there was such a failure of consideration of the note sued on as to discharge the defendant from liability upon it.

It appears from the evidence, that the note was given as a part of an endowment-fund for the Female College, to be raised by contributions of individuals, which were to be secured by the note of each contributor, payable on time to be fixed by him, not exceeding five years, bearing interest from date payable annually, and renewable thereafter upon such terms as the board of trustees should prescribe. And in consideration of the note, the contributor was, by the rules and regulations of the institution, to receive a certificate of scholarship entitling the holder to receive instruction "in any college class" which the pupil might be prepared to enter, perpetually and free of tuition fees. It was also shown by the testimony of Mallett, the agent of the plaintiff, who took this note from the defendant, that it was his understanding that if the interest on such

notes was promptly paid, the maker should have the privilege of renewing, and that he was in the habit of making that statement to parties giving their notes; and that witness also testified that, at the time of taking this note, he told the defendant that he understood that music was to be included in the studies to which his scholar would be entitled. It was also proved by Keeney, who was for two years president of the institution, that although the college course did not embrace music, yet the trustees resolved to allow the holders of scholarship, tuition in music, free, in addition to the usual college course, and that he always settled on that principle. It was further in evidence, that the defendant sent a scholar to the institution in March, 1852, shortly after its commencement, paying twenty dollars for half the interest then due on his note; and in July, 1852, at the close of the session, that he paid the further sum of twenty dollars for interest on his note, and was required by the president to pay the sum of thirty dollars on account of music for the scholar, the defendant at first refusing to pay that sum, and claiming the right, under his scholarship, to send a pupil to the institution free of all charges for tuition, on paying interest on his note, which he had done; but the president saying that he would not be governed by the scholarships; and the defendant then settled, as required, but stated to the president, that if they would not be governed by the scholarship, he, the defendant, would not be; and demanded his note, which was refused.

From this evidence, it is manifest that the consideration for the note arising to the defendant, was the right to have his pupil instructed in any college class, free of charge, and that instruction in music was intended to be embraced in the course of studies. The latter branch was a material part of the studies, as it would appear from the sum charged for it, and paid by the defendant, exceeding the amount paid for all other branches of study. It was stated by the agent who took the note, that it was embraced in the scholarship, and it appears to have been allowed as a part of it by resolution of the board of trustees. It was, therefore, plainly a right to which the defendant was entitled as an essential part of the consideration of his note; and when denied, he was authorized to consider the contract as at an end, and to demand a rescission of it, as he did.

It is also clear, from this view, that there is no error in the action of the court in overruling the demurrer to the first and second answers of the defendant, and in overruling the plaintiff's objection to the question propounded to the witness Mallett by the defendant, and to the admission of the record-book of the proceedings of the board of trustees of the institution. This evidence was competent upon the question of the consideration of the note, and was properly admitted.

The testimony of the witness Kilgore was immaterial, and the verdict is well justified by the evidence, independent of it. And the eleventh instruction in reference to it, asked by the plaintiff, if material, was incorrect as a legal proposition; for the corporation certainly possessed power to release a party who had executed a note for its benefit for scholarships, which is denied by the instruction.

The refusal of the eighth instruction was not error to the plaintiff's prejudice, because the same rule had already been stated to the jury in the third instruction for the plaintiff.

Upon the whole case, it is evident that the defendant's failure to pay the interest upon his note, which appears to have been the main purpose and intent of the contract, was occasioned by the failure on the part of the plaintiffs to comply with that part of the contract by which the defendant was entitled to send his scholar to the college free of any charge for instruction in music; and that this was so essential a part of the consideration as justified the defendant in claiming a rescission of the contract.

The judgment is, therefore, correct, and it is affirmed.